# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| CATHERINE LANCASTER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIV-13-1348-R |
| | ) | |
| SPRINT/UNITED MANAGEMENT | ) | |
| CO., a/k/a SPRINT NEXTEL GROUP, | ) | |
| | ) | |
| Defendant. | ) | |

## ORDER

On September 10, 2015, the Court entered an Order granting Defendant's Motion for Summary Judgment, because Plaintiff had failed to respond and to rebut the facts set forth by Defendant's motion. The Court thereafter vacated its Order, because Plaintiff's counsel had failed to respond to the motion without the knowledge of her client, who believed a response had been filed. The matter is currently before the Court on Plaintiff's *pro se* Clarification and Opposition to Defendant Sprint/United Management Company's Motion for Summary Judgment (Doc. No. 76). Defendant filed a reply in opposition to Plaintiff's *pro se* response. (Doc. No. 77). Having considered Defendant's Motion for Summary Judgment (Doc. No. 63) in light of the Plaintiff's response and Defendant's reply, the Court finds as follows.

Pursuant to Fed. R. Civ. P. 56(c), a party has four options to dispute a fact in response to a motion for summary judgment: (1) cite to record evidence contradicting the fact; (2) show that the cited evidence does not establish the presence or absence of a genuine dispute;

(3) show that the adverse party cannot produce admissible evidence to support the fact; or (4) object that the fact is not supported by admissible evidence. Facts offered to dispute a defendant's statements of fact must be supported by "particular parts of material in the record." Fed. R. Civ. P. 56(c)(1)(A). Under Local Civil Rule 56.1(b), the movant's brief must contain "a concise statement of material facts" that the movant contends are not genuinely disputed. If any such fact is not "specifically controverted" by the nonmoving party, that fact "may be deemed admitted for the purpose of summary judgment." LCvR 56.1(c). Although a pro se litigant's pleadings are to be construed liberally and held to a less stringent standard than those by lawyers, *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991), the Tenth Circuit has "repeatedly insisted that pro se parties follow the same rules of procedure that govern other litigants." *Neilsen v. Price*, 17 F.3d 1276, 1277 (10th Cir. 1994) (internal quotation marks omitted). As such, Plaintiff's failure to properly respond would permit the Court to find Defendant's statement of facts, as supported by the evidence, undisputed. The Court finds that such is not necessary, however, because even giving liberal construction to Plaintiff's claims, she has failed to rebut Defendant's motion.

     Plaintiff was an employee of Defendant Sprint at an Oklahoma City call center working as an advanced technician, providing customers with technical support for their telephones. Included among her job duties was speaking via telephone with Sprint customers and utilizing various software platforms to assist in resolving technical difficulties with their cellular telephones. She performed her duties at a work station with a computer; and sitting and standing were both essential functions of her position.

On June 21, 2012, Plaintiff left work due to stress, of unknown origin. She remained off work pursuant to doctor's orders. On July 11, 2012, Plaintiff applied for short-term disability benefits through Sprint. Her application was denied on July 16, 2012, and her appeal was denied on August 30, 2012. By letter dated August 23, 2012, Plaintiff was notified that her request for leave under the Family Medical Leave Act had been approved. She was granted FMLA leave from June 22, 2012 until September 6, 2012. On September 6, 2012 Plaintiff filed a workers' compensation claim, claiming injury related to carpal tunnel, specifically with regard to her arms, and her neck. She allegedly requested an ergonomic chair and was told all the chairs at Sprint were ergonomic. She testified in her deposition that regardless of what type of chair Defendant was able to offer, she would have been unable to work.

Plaintiff apparently attempted to return to work in September 2012, when her FMLA leave expired. She testified that when she attempted to return she was being too distractive, and a manager named Ryan Clabour asked her to go home and provided her with information about filing a workers' compensation claim. As noted, she filed the claim that same day and apparently left work and did not return for months. As a result, by letter dated November 8, 2012, the Sprint Leave Management Group informed Plaintiff that she was placed on a temporary leave of absence effective September 14, 2012, because of her workers' compensation claim. As a result, and consistent with Sprint's policies regarding non-FMLA leave, Plaintiff's access to Sprint technology ceased.

On April 15, 2013, Plaintiff's physician, Dr. A.J. Bisson signed a worker's compensation status report for Plaintiff's case against Sprint. He opined that Plaintiff could work eight hours per day, subject to restrictions on pushing, pulling, lifting, and that she could not carry more than ten pounds. According to a letter from Defendant to Plaintiff, dated April 16, 2013, Sprint's records showed that Plaintiff had last worked on April 4, 2013. The letter stated that she needed to return to work before April 22, 2013, or to contact Angie Perry-Funderburgh, because the limits included in Dr. Bisson's letter were not inconsistent with Plaintiff's job requirements. The letter advised Plaintiff that if a serious health condition precluded her return that she should contact Sprint's Leave Coordinator regarding FMLA leave or short term disability.

Plaintiff returned to work on April 22, 2013. She testified that her supervisor, Maurice Williams, advised her that with a prescription Sprint would provide her with a different type of computer.[1] Plaintiff was apparently unsuccessful in her attempt to return to her job and she determined on April 22, 2013, the day she returned, that she was unable to perform her duties. She was given paperwork to complete regarding the ADA. Jim Cunningham advised Plaintiff that she could seek a leave of absence under the ADA with the appropriate paperwork completed by a physician. Plaintiff did not return to Sprint after April 22, 2013.

On April 25, 2013, Dr. David Fisher completed the Sprint Reasonable Accommodation Form for Plaintiff. He indicated that she had a long-term or permanent

---

[1] To enable her to stand while working Plaintiff had a co-worker stack her monitor. She was informed that the practice had ceased at Sprint because employees were knocking monitors over.

impairment with difficulty performing job functions of sitting and standing. The form asked "If not permanent, how long will the impairment likely last?" Dr. Fisher did not answer this question, nor did he indicate what accommodations would be effective, although the form inquired of such.

On April 30, 2013, Jim Cunningham left a voice message for Plaintiff, stating:

> Hi, Catherine, this is Jim Cunningham at Sprint returning your call. I did get the paperwork from your physician. There is one specific area that he didn't fill out that we need filled out on it. It did ask is the impairment long-term or permanent. He did mark yes. The other thing that is if it's not permanent how long will the impairment likely last. I need him to put an estimate date there, or if it's permanent then just to put that it's permanent and then fax it back to us.

Plaintiff Depo. Ex. 1.

On May 1, 2013, Defendant sent a letter to Plaintiff indicating she had last worked on April 22, 2013. The letter referenced Dr. Fisher's April 15, 2013 letter and that the limitations contained therein were not inconsistent with Plaintiff's job. The letter also noted that Plaintiff had been provided ADA paperwork, but that it was incomplete, as per the telephone message of April 30, 2013. A new copy of the paperwork as well as a copy of her prior submissions was given to Plaintiff. She was informed of the need to return to work or to submit the completed forms properly not later than May 13, 2013.

Plaintiff responded with additional information from Dr. Fisher as well as a letter indicating that she was not resigning, but that she was unable to work because of an on-the-job injury. She formally requested "a leave of absence until such time I can receive the

5

necessary treatments to repair and correct the abnormalities in my body." On December 23, 2013, Plaintiff filed this action.

Plaintiff seeks relief under the ADA. She alleges claims of disability discrimination, failure to accommodate and retaliation. The ADA prohibits covered employers from discriminating against "a qualified individual on the basis of disability." 42 U.S.C. § 12112(a). The *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), burden-shifting framework applies to ADA discrimination claims. *Carter v. Pathfinder Energy Servs., Inc.*, 662 F.3d 1134, 1141 (10th Cir.2011). Under this framework, Plaintiff may establish a *prima facie* case of discrimination by showing that she "(1) is a disabled person as defined by the ADA; (2) is qualified, with or without reasonable accommodation, to perform the essential functions of the job held or desired; and (3) suffered discrimination by an employer or prospective employer because of that disability." *E.E.O.C. v. C.R. England, Inc.*, 644 F.3d 1028, 1037–38 (10th Cir.2011) (internal quotation marks omitted). For purposes of the motion Defendant conceded the first element of the *prima facie* case.

> As to the second element, determining whether an individual is "qualified" within the meaning of the ADA involves a two-part inquiry: 1) whether the individual can perform the essential functions of the job; and 2) if the individual is unable to perform the essential functions of the job, whether any reasonable accommodation by the employer would enable her to perform those functions. *Mason v. Avaya Commc'ns, Inc.*, 357 F.3d 1114, 1118 (10th Cir.2004).

*Murphy v. Sampson Res. Co.*, 525 Fed.Appx. 703, *2 (10th Cir. 2013).

Plaintiff contends she can satisfy all the requirements of being disabled, but that Defendant rejected her paperwork as insufficient. Doc. No. 76, p. 4. Defendant, however, did not conclude that Plaintiff was not disabled. Defendant, however, does not argue Plaintiff was not disabled. Instead, relying on her doctor's statement that her impairments were permanent and the absence of any identified potential accommodation, that Plaintiff was not "qualified."

Having considered Plaintiff's response to the Defendant's motion, the Court again concludes that there is no dispute that in May 2013, Plaintiff could not perform the essential functions of her job, to include sitting and standing.[2] Additionally, she testified that there was nothing Sprint could have done by way of accommodation to make it possible for her to perform the essential functions of her job. Rather, she sought an extended leave of absence, of unknown duration.

In *Robert v. Board of County Com'rs of Brown County*, 691 F.3d 1211 (10th Cir. 2012), the court defined the parameters of reasonableness with regard to a leave of absence as a reasonable accommodation.

> There are two limits on the bounds of reasonableness for a leave of absence. The first limit is clear: The employee must provide the employer an estimated

---

[2] Plaintiff requested "a leave of absence until such time I can receive the necessary treatments to repair and correct the abnormalities in my body." She testified that even two years after she last worked at Sprint, she could not return to her job, nor can she perform any work. Plaintiff testified in July 2015 that "There's no job I can do in the condition I'm in." Depo., p. 43. At no time between May 2013 and July 2015 could Plaintiff have been able to go back to work at Sprint. Depo., p. 55. In the ADA paperwork submitted by Plaintiff's treating physician, Dr. David Fisher, he indicated that he could not identify any accommodations to improve Plaintiff's job performance.

7

> date when she can resume her essential duties. *See e.g.*, *Cisneros*, 226 F.3d at 1130; *Rascon*, 143 F.3d at 1334. Without an expected end date, an employer is unable to determine whether the temporary exemption is a reasonable one.
>
> The second is durational. A leave request must assure an employer that an employee can perform the essential functions of her position in the "near future." *Cisneros*, 226 F.3d at 1129 (quotation omitted). Although this court has has not specified how near that future must be, the Eighth Circuit ruled in an analogous case that a six-month leave request was too long to be a reasonable accommodation. *Epps v. City of Pine Lawn*, 353 F.3d 588, 593 (8th Cir.2003).

*Id.* at 1218. The evidence is undisputed that Sprint had no estimation of the date Plaintiff would be able to resume her position. The evidence Sprint received from Dr. Bisson dated April 15, 2013, did not include any limitations inconsistent with Plaintiff's ability to perform the essential functions of her then-job. She indicated, however, that she could not perform any work for Sprint because she could not sit for long periods, concentrate, nor walk long distances, as reported by Dr. Fisher. Plaintiff, however, did not offer any alternative to an undefined leave of absence, which apparently would persist even two years later as evidenced by Plaintiff's deposition testimony. Because Sprint did not have a reasonable estimate of when Plaintiff would be able to resume the essential functions of her job, she is not a qualified individual under the ADA and her claim of discrimination must fail.[3]

To establish a prima facie case of failure to accommodate under the ADA, a plaintiff must show that (1) she is a qualified individual with a disability; (2) the employer was aware of her disability; and (3) the employer failed to reasonably accommodate her disability. *Allen*

---

[3]Because Plaintiff cannot establish the second prong of a *prima facie* case, Defendant is entitled to summary judgment and the Court will not address its alternative arguments in support of summary judgment.

*v. SouthCrest Hosp.*, 455 Fed.Appx. 827, 830 n. 2 (10th Cir. 2011). Defendant does not directly address these three elements, focusing solely on the third element, whether Plaintiff's requested accommodation was reasonable. As noted above, the request for an indefinite leave of absence, with no anticipated return date, was unreasonable as a matter of law, Defendant is entitled to summary judgment on Plaintiff's failure to accommodate claim.

Defendant also seeks summary judgment on Plaintiff's ADA retaliation claim. The ADA provides that "[i]t shall be unlawful to coerce, intimidate, threaten, or interfere with any individual in the exercise or enjoyment of or on account of his or her having exercised or enjoyed ... any right granted or protected by this chapter." 42 U.S.C. § 12203(b). Plaintiff must provide evidence of each of the following elements in order to establish a *prima facie* case of retaliation: (1) that she engaged in an activity protected by the statute; (2) that "she was subjected to [an] adverse employment action subsequent to or contemporaneous with the protected activity;" (3) that there was a causal connection between the protected activity and the adverse action. *Selenke v. Med. Imaging of Colorado*, 248 F.3d 1249 (10th Cir.2001)(quoting *Anderson v. Coors Brewing Co.*, 181 F.3d 1171, 1178 (10th Cr. 1999)). Defendant concedes for purposes of the motion that Plaintiff requested an accommodation, an activity protected by the statute.[4] It contends, however, that she cannot establish either the second or third element of a *prima facie* case of ADA retaliation. Defendant alternatively

---

[4] To the extent Plaintiff complains about the denial of requests for benefits dated July 16, 2012 and August 30, 2012, those denials are irrelevant to the outcome of the instant motion. Plaintiff apparently sought short-term disability benefits which were denied by letters on those dates. According to the record before the Court, however, Plaintiff did not include any allegation regarding such benefits in her EEOC charge, which was filed June 18, 2013.

argues that Plaintiff cannot establish pretext for its legitimate non-retaliatory reason for discharging Plaintiff, that is her inability to perform the essential functions of the job and her failure to report to work. *See Anderson*, 181 F.3d at 1178 (If an employer satisfies its burden of production with regard to legitimate non-retaliatory reason, then, in order to prevail on her retaliation claim, the plaintiff must prove that the employer's articulated reason for the adverse action is pretextual, unworthy of belief.). Defendant contends the basis for relieving Plaintiff of her job was the fact that she failed to report, as requested by Defendant, and further, that she could not perform the functions of her job, as she admits. Despite the Court granting Plaintiff leave to file a response out of time, she presents no response to Defendant's assertion of a legitimate non-retaliatory basis for its actions, and thus, Defendant is entitled to summary judgment on Plaintiff's ADA retaliation claim.

Defendant also seeks summary judgment on Plaintiff's claim of race discrimination in violation of 42 U.S.C. § 1981, which relies upon the same analysis as a Title VII race discrimination claim. *See Davis v. Unified Sch. Dist. 500*, 750 F.3d 1168, 1170 (10th Cir. 2014). Accordingly, where, as here, there is no direct evidence of discrimination, the familiar *McDonnell Douglas* burden-shifting framework applies. *Id.* The Court has reviewed the evidence provided by Defendant and finds there is insufficient evidence in support of Plaintiff's contention that she was treated differently because of her race.

At her deposition the following exchange occurred:

Q: Why do you believe that you were discriminated against because of your race?

> A: There was no other option. The white people got fixed. Why not Catherine? Its it because I'm black? Uh, yes.

Depo, Tr. 101. Plaintiff thereafter attempted to identify the two white people who were "fixed." There, is, however, no evidence regarding one of the two persons she identified, known to her only as Cindy. She did not know Cindy's health condition, anything about her workers' compensation claim, or her health, she only heard from Ryan that Cindy had been successfully treated, without any details of what successful treatment entailed. *Id.* With regard to the white male employee, Ryan, Plaintiff knew he had a workers' compensation claim for carpal tunnel, for which he received surgery. The alleged discrepancy in the treatment offered to Plaintiff and that offered to Ryan and/or Cindy, however, is too vague as to support a claim for discrimination based on race.[5] There is no evidence regarding the extent of any of their injuries nor is there evidence regarding when or how their claims were processed so as to allow a comparison to support Plaintiff's theory of racial discrimination. Plaintiff concedes this is the only allegation underlying her claim of racial discrimination, and it is insufficient to avoid summary judgment. As such, Defendant's motion is granted with regard to Plaintiff's 42 U.S.C. § 1981 claim.

---

[5] In her response to the motion for summary judgment Plaintiff's argument regarding race is limited to the following:
> But it does not end with discrimination towards the Plaintiff's injuries. To say nothing of the Plaintiff's race as having an impact would be ideal; however, when medical treatment is allowed for a colleague of another race while the Plaintiff is continually harassed, provides confusion and disappointment.

Doc. No. 76, p. 10.

Finally, Defendant contends it is entitled to summary judgment on Plaintiff's claim that Defendant retaliated against her for filing a workers' compensation claim. Plaintiff did not respond to this portion of Defendant's motion, and accordingly, the Court deems her claim for retaliatory discharge waived.

For the reasons set forth herein, Defendant's motion for summary judgment is hereby GRANTED. Judgment shall be entered accordingly.

IT IS SO ORDERED this 29th day of January, 2016.

_David L. Russell_
DAVID L. RUSSELL
UNITED STATES DISTRICT JUDGE